IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **MCGOWAN INVESTORS LP**, et al., | : | |
| Plaintiffs, | : | |
| | : | NO. 07-cv-2464 |
| v. | : | |
| | : | |
| **KEEFE BRUYETTE &** | : | |
| **WOODS, INC.**, et al., | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM AND ORDER**

_March 19_, 2008                                    Anita B. Brody, J.


*I. INTRODUCTION*

In January, 2004, the Philadelphia Stock Exchange ("PHLX") demutualized.

"Demutualization" is the conversion of a mutual non-profit organization owned by seat owners

into a for-profit corporation that issues stock. While considering demutualization, the PHLX

Board of Governors (the "Board") engaged Defendant Keefe Bruyette & Woods, Inc. ("KBW")

to advise it on demutualization and the alternatives. KBW recommended demutualization as the

best option for keeping the PHLX financially viable. In November, 2003, the seat owners voted

for demutualization, and in January, 2004, the PHLX was demutualized.

Unhappy with the decision to demutualize, the plaintiffs, McGowan Investors LP, Tim

Lobach, Stephen J. Cheseldine, and Market Street Securities (collectively "McGowan" or

"McGowan and the other plaintiffs"), a putative class of former seat owners, are suing KBW and

1

its managing director, Joseph J. Spalluto. They claim damages they allegedly incurred when they followed KBW's advice.

KBW moved to dismiss under Fed. R. Civ. P. 12(b)(6) on the grounds that this case is barred by a court-approved release in the settlement of a Delaware class action suit.[1] I grant KBW's motion.

## II. FACTUAL BACKGROUND

In July, 2001, the PHLX Board hired KBW to provide financial services advice. On October 1, 2003, KBW sent the PHLX Board a letter (the "KBW Advisory") in which KBW concluded:

1.  The financial viability of PHLX, in its current operating structure is questionable.

2.  Demutualization, while in itself not able to guarantee financial and/or operational success, does in fact (at the very least) position PHLX to pursue certain strategic alternatives, the pursuit and successful execution of which could assist the future financial performance and financial condition of the PHLX.

3.  In its current mutual structure, with a charter providing that the Exchange is "not for profit" and that dividends cannot be paid, PHLX is either precluded completely from pursuing the stated alternatives, or handicapped significantly in its pursuit of them. The one exception identified by KBW – a strategic alternative focused on the

---

[1] KBW makes eight arguments in the motion to dismiss: (1) this case is barred by the Delaware Release; (2) this case is precluded by res judicata; (3) the Rule 10b-5 claims are barred by the statute of limitations; (4) the § 29(b) claims are collaterally estopped; (5) the plaintiffs failed to state a § 10(b) or Rule 10b-5 claim upon which relief can be granted; (6) the plaintiffs failed to state a § 29(b) claim upon which relief can be granted; (7) the plaintiffs have not stated a proper RICO claim; and (8) defendant Spalluto was not properly served. Because I decide that this case is barred by the Delaware Chancery Court's Settlement Order, I do not reach the defendants' other arguments.

> reduction of operating costs – appears to be a viable near-term alternative if executed carefully, though it is unlikely to be a satisfactory long-term solution absent corresponding growth in revenue.
>
> 4.   A near-term strategy centered on demutualization is a reasonable and appropriate strategy for PHLX and a substantially better alternative than the strategies that KBW believes are reasonably available to PHLX.

(KBW Advisory, Doc. #7, Exhibit C).

On October 22, 2003, the PHLX Board sent the PHLX seat owners a letter explaining demutualization, attaching the KBW Advisory. In November, 2003, in part because of the KBW Advisory, the seat owners voted to demutualize the PHLX. In January, 2004, the PHLX was demutualized.

On January 21, 2004, the PHLX revealed to the former seat owners that the PHLX was actually in a stronger financial position than the former seat owners had been led to believe before they voted for demutualization. Consequently, there have been a number of suits in both state and federal courts about the demutualization of the PHLX and the investment decisions that followed.

A.  The Present Action

McGowan alleges that KBW deceived the PHLX seat owners by fraudulently convincing them that the only real option to keep the PHLX operational was to demutualize the PHLX. Partly because of KBW's advice, the seat owners chose to become shareholders in the demutualized PHLX, instead of accepting the option of an appraisal given to them by the Delaware Chancery Court. McGowan contends that if the former seat owners had exited through

3

an appraisal, they would have received a minimum of $500,000 per seat, which is considerably

more than their PHLX stock was worth.

McGowan seeks: (1) damages for violations of § 10(b) of the Securities and Exchange

Act and Rule 10b-5 thereunder; (2) recission under § 29(b) of the Securities and Exchange Act of

the agreement between KBW and the PHLX in which the PHLX engaged KBW as an advisor;

and (3) damages for civil RICO violations under 18 U.S.C. § 1962(d) with securities fraud as the

predicate acts.

B.  The Ginsburg Action

Ginsburg v. Philadelphia Stock Exchange, Inc., et al., C.A. No. 2202-CC (Del. Chancery

Ct., New Castle County) (the "Ginsburg Action") was a shareholder class action lawsuit in the

Delaware Chancery Court against the PHLX and other related parties.  In that action, the

Ginsburg plaintiffs argued that the PHLX and the individual defendants breached their fiduciary

duties by entering into strategic investments after demutualization.[2]

The Ginsburg class was defined as:

> [A]ll class A common stockholders of the Philadelphia Stock
> Exchange, Inc. ('PHLX'), on April 20, 2005, and their transferees
> or successors in interest through June 20, 2007.

(Settlement Order, ¶ 4).  This was a non-opt out class, hence class members could not choose to

litigate separately.  McGowan and the other plaintiffs were class A common stockholders of the

PHLX on April 20, 2005 and thus were members of the class.  KBW was not a defendant in the

---

[2] Other cases stemming from the demutualization of the PHLX include: McGowan
Investors LP, et al. v. Frucher, et al., 481 F.Supp.2d 405 (E.D. Pa. 2007) and  PennMont
Securities v. Frucher, et al., No. 05-6686 (E.D. Pa. 2005), before this Court and PennMont
Securities v. DiDonato, et al., No. 06-1646 (E.D. Pa. 2006) and Feinberg v. Benton, et al., No.
05-4847 (E.D. Pa. 2005), before Judge Buckwalter.

Ginsburg Action, but it was subpoenaed as a non-party witness and provided documents and two witnesses for depositions.

On September 4, 2007, the Ginsburg Action settled and the parties entered into a release of certain claims (the "Delaware Release"). During the hearing before the Delaware Chancery Court on whether to approve the proposed settlement, the Court heard the objections of McGowan and the other plaintiffs. The Delaware Chancery Court denied their objections to the proposed settlement agreement.

On October 22, 2007, the Delaware Chancery Court certified the non-opt out plaintiff class and approved the Ginsburg Action's settlement agreement (see attachment). The Delaware Chancery Court's Order and Final Judgment ("Settlement Order") includes the following provisions:

> Plaintiff and all members of the Class, Defendants, their respective affiliates, and anyone claiming through or for the benefit of any of them, are hereby permanently barred and enjoined from commencing, or in any way participating in the commencement of, any action or proceeding, in any forum, asserting against any of the Released Persons any Settled Claims, either directly, representatively, derivatively, or in any other capacity.

(Settlement Order, ¶ 13).

> "Settled Claims" means: (a) As against the Defendant-Related Releasees: all claims, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, judgments, suits, fees, expenses, costs, matters, and issues of any kind or nature whatsoever, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, matured or unmatured, that have been, could have been, or in the future can or might be asserted in this Action or in any court, tribunal, or proceeding (including but not limited to, any claims arising under federal or state statutory or common law relating to alleged fraud, breach of any duty, negligence, violations of state or federal

securities laws or otherwise) by or on behalf of any member of the Class, whether individual, class, derivative, representative, legal, equitable, or any other type or in any other capacity, and based on any conduct that occurred prior to the date of this Stipulation, against any Defendant-Related Releasees, whether or not any such Defendant-Related Releasees were named, served with process, or appeared in this Action, which have arisen, could have arisen, arise now, or may hereafter rise out of, or relate in any matter to the claims, demands, assertions, allegations, facts, events, transactions, matters, acts, occurrences, statements, representations, misrepresentations, omissions, or any other matter, thing, or cause, whatsoever, or any series thereof, embraced, involved, or set forth in or referred to or otherwise related, directly or indirectly, in any way to, this Action or the subject matter of this Action, and including without limitation any claims (whether or not asserted) in any way related to: (I) Demutualization . . .

(Settlement Order, ¶ 11).

"Released Persons" means Plaintiff-Related Releasees and Defendant-Related Releasees.

(Settlement Order, ¶ 10).

"Defendant-Related Releasees" means Defendants and their respective immediate family members, their respective present and former parents, subsidiaries, divisions, and affiliates; the present and former employees, members, principles, officers, governors, and directors of each of them; the present and former attorneys, advisors, financial advisors, investment bankers, trustees, administrators, fiduciaries, consultants, representatives, accountants and auditors, insurers, and agents of each of them; and the predecessors, estates, heirs, executors, trusts, trustees, administrators, successors and assigns of each.

(Settlement Order, ¶ 8).

"Plaintiff-Related Releasees" means Plaintiff and his immediate family members (including parents and child), his present and former attorneys, advisors, trustees, administrators, fiduciaries, consultants, representatives, accountants and auditors, insurers, and agents of each of them; and the predecessors, estates, heirs,

6

> executors, trusts, trustees, administrators, successors and assigns of
> each.

(Settlement Order, ¶ 9).

## III.  LEGAL STANDARD AND JURISDICTION

According to Fed. R. Civ. P. 12(b)(6), a court must grant a motion to dismiss if the

plaintiff fails "to state a claim upon which relief can be granted."  In deciding a motion to dismiss

pursuant to Rule 12(b)(6), the court must accept as true the well-pleaded allegations of the

complaint and draw all reasonable inferences in the plaintiff's favor.  Brown v. Card Serv. Ctr.,

464 F.3d 450, 452 (3d Cir. 2006).  However, it is "not bound to accept as true a legal conclusion

couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).  In deciding a

motion to dismiss, a court may properly consider any documents incorporated by reference into

the complaint and all documents of which it can take judicial notice.  Winer Family Trust v.

Queen, 503 F.3d 319, 327 (3d Cir. 2007).[3]

I have jurisdiction over the securities claims under § 27 of the Exchange Act, 15 U.S.C. §

78aa, and over the RICO claims under 18 U.S.C. § 1964(c).

## IV.  DISCUSSION

The permanent injunction in the Settlement Order entered by the Delaware Chancery

Court in the Ginsburg Action bars McGowan's claims.  An individual claim by a person who was

a class member in a prior class action suit is barred by a settlement of the class action where the

settlement includes a release applicable to his later individual action.  See In re Prudential

Insurance Company of America Sales Practice Litigation, 261 F.3d 355, 366 (3d Cir. 2001) ("It is

---

[3]  I take judicial notice of the Delaware Chancery Court's Order and Final Settlement (the
"Settlement Agreement").

now well settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action."). <u>See also</u> <u>TBK Partners, Ltd. v. Western Union Corp.</u>, 675 F.2d 456, 460 (2d Cir. 1982). This is true even if the underlying class action was brought in state court and the later litigation is in federal court. <u>Grimes v. Vitalink Communications Corp.</u>, 17 F.3d 1553 (3d Cir. 1994).

Article IV of the United States Constitution provides:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S. CONST. art. IV, § 1. The preclusive effect of a state court judgment in a federal lawsuit is determined by the full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." <u>Marrese v. American Academy of Orthopaedic Surgeons</u>, 470 U.S. 373, 380 (1985) (quoting 28 U.S.C. § 1738). <u>See also</u> <u>Grimes</u>, 17 F.3d at 1562.

To bar future claims, a release must (1) apply to the plaintiff; (2) circumscribe the asserted claims; and (3) be legally enforceable. <u>Nottingham Partners v. Trans-Lux Corp.</u>, 925 F.2d 29, 32 (1st Cir. 1991); <u>Elite Sportswear Products, Inc. v. New York Life Ins. Co.</u>, 2006 WL 3052703 at *6 (E.D. Pa. October 24, 2006); <u>Chartener v. Provident Mutual Life Ins. Co.</u>, 2004 WL 1091027 at *2-3 (E.D. Pa. May 13, 2004).

*(1) Apply to the Plaintiff*

For a release to apply to a plaintiff, a releasing court must have personal jurisdiction over that plaintiff. Grimes, 17 F.3d at 1558. Stock ownership in a Delaware corporation is sufficient contact with Delaware for its courts to exercise personal jurisdiction over the stock owner for claims relating to that stock ownership. Id. at 1559. McGowan concedes that the Delaware Chancery Court had personal jurisdiction over it and the other plaintiffs to bind them in the Settlement Order because they owned PHLX stock and they were members of the Ginsburg class.[4] The permanent injunction in the Settlement Order bars future claims by "all members of the Class." (Settlement Order, ¶ 13). Because McGowan and the other plaintiffs were all members of the Ginsburg class and the Delaware Chancery Court had personal jurisdiction over them, the release in the Settlement Order applies to them.

McGowan argues that although it and the other plaintiffs were members of the Ginsburg class, the Delaware Chancery Court did not have personal jurisdiction over one plaintiff, Tim Lobach, as to a specific lot of his PHLX stock. Lobach sold some of his stock before the Ginsburg class period began. Thus, McGowan contends that the Delaware Chancery Court only had personal jurisdiction over Lobach for the specific purpose of adjudicating the claims arising out of his stock ownership that qualified him for the Ginsburg class, not for limiting Lobach's rights as to the stock outside of the class definition. I disagree.

---

[4] Moreover, McGowan and the other plaintiffs appeared in the Delaware Chancery Court to object to the proposed settlement agreement. By appearing in the Delaware court, they waived their right to challenge the Delaware court's exercise of personal jurisdiction over them because they invoked "the benefits and protections of [Delaware's] laws." Hanson v. Denkla, 357 U.S. 235, 253 (1958).

The Delaware Chancery Court had jurisdiction to release the Ginsburg class members' future claims based on the allegations in the underlying class action in the Settlement Order. See In re Prudential Insurance Company of America Sales Practice Litigation, 261 F.3d at 366; TBK Partners, 675 F.2d at 460.  Lobach admits that he was a member of the Ginsburg class.  The Delaware Chancery Court had personal jurisdiction over Lobach because of his stock ownership and because Lobach appeared in a Delaware court in connection with this litigation.  Thus, Lobach is bound by the Settlement Order.

The Settlement Order explicitly bars future claims arising out of demutualization by class members acting "in any other capacity" in two separate provisions, the permanent injunction and the definition of "Settled Claims." (Settlement Order, ¶¶ 11 and 13).  Here, Lobach is trying to sue KBW for its alleged misdeeds in connection with demutualization in the alternative capacity of a non-Ginsburg class period shareholder.  Lobach is a class member acting "in any other capacity."  Because the Settlement Order applies to Lobach and because it bars suits by shareholders in any other capacity, Lobach's claims are barred.

### (2) Circumscribe the Asserted Claims

Federal courts can release claims not raised in the previous suit's complaint. See In re Prudential Insurance Company of America Sales Practice Litigation, 148 F.3d 283, 326 & n.82 (3d Cir. 1998).  The claims must be based on the same factual predicate as those asserted in the subsequent suit.  Id.  The factual predicate underlaying the Ginsburg Action and the resulting Settlement Order was demutualization.  The Settlement Order specifically bars "any claims (whether or not asserted) in any way related to (I) Demutualization . . ." (Settlement Order, ¶ 11).  Here, all of McGowan's claims against KBW are based on demutualization.  Because the factual

10

predicate underlaying this action and the Ginsburg Action is the same, the release in the Settlement Order circumscribes the asserted claims.

Additionally, to circumscribe the asserted claims the defendant must be covered by the previous case's release. See, e.g., Thompson v. Wheeler, 898 F.2d 406, 411-13 (3d Cir. 1990). The Settlement Order in the Ginsburg Action defines "Defendant-Related Releasees" as "Defendants and their . . . advisors, [and] financial advisors, . . ." (Settlement Order, ¶ 10). KBW was an advisor to PHLX and its Board, who were defendants in the Ginsburg Action. Therefore, KBW is covered by the Ginsburg Action's Settlement Order.

### (3) Be Legally Enforceable

The Third Circuit consistently finds broad release language in class action settlement orders legally enforceable. See, e.g., In re Prudential Insurance Company of America Sales Practice Litigation, 261 F.3d at 366 (enforcing a class action settlement agreement that released any claims "that have been, could have been, may be or could be alleged or asserted now or in the future . . . on the basis of, connected with, arising out of, or related to, in whole or in part" to the facts at issue); Grimes, 17 F.3d at 1554 n.1 & 1562 n.10 (enforcing a class action settlement agreement releasing "[a]ll claims, rights, causes of action, suits, matters and issues, known or unknown, that arise now or hereafter out of, or that relate to, or that are, were or could have been asserted in connection with [the facts at issue] . . . or any matters, transactions or occurrences referred to in the Complaint . . . or other activities relating to the foregoing"). Broad language in a settlement order indicates a clear intent to leave nothing open and unsettled between the parties. See Three Rivers Motor Company v. Ford Motor Company, 522 F.2d 885, 895 (3d Cir. 1975).

The Delaware Chancery Court's Settlement Order is similar to other releases the Third Circuit has found legally enforceable and it contains broad language indicating that the Delaware Chancery Court intended the Settlement Order to leave nothing open and unsettled in connection with claims arising out of the demutualization of the PHLX.

## V. CONCLUSION

Because the Delaware Chancery Court's Settlement Order applies to all of the plaintiffs, circumscribes all of the asserted claims, and is legally enforceable, McGowan and the other plaintiffs are bound by its terms in this action under the full faith and credit statute, 28 U.S.C. § 1738. The Settlement Order's permanent injunction provides:

> Plaintiff and all members of the Class, Defendants, their respective affiliates, and anyone claiming through or for the benefit of any of them, are hereby permanently barred and enjoined from commencing, or in any way participating in the commencement of, any action or proceeding, in any forum, asserting against any of the Released Persons any Settled Claims, either directly, representatively, derivatively, or in any other capacity.

(Settlement Order, ¶ 13). "Settled Claims" means "all claims . . . by or on behalf of any member of the Class, whether individual, class, derivative, representative, legal, equitable, or any other type or in any other capacity, and based on any conduct that occurred prior to the date of this Stipulation . . . in any way related to: (I) Demutualization . . ." (Settlement Order, ¶ 11), and "Released Persons" includes the Ginsburg defendants and their advisors. (Settlement Order, ¶¶ 8 and 10). KBW was an advisor to PHLX. The terms of the Delaware Chancery Court's Settlement Order bars McGowan and the other plaintiffs from commencing any action against KBW in any way related to demutualization. Therefore, KBW's motion to dismiss is granted.

12

## ORDER

**AND NOW**, this _14_ day of March, 2008, it is **ORDERED** that Defendants' Motion

to Dismiss (Doc. #5) is **GRANTED** and this case is **DISMISSED** with prejudice.


_____

ANITA B. BRODY, J.


Copies **VIA ECF** on _____ to:        Copies **MAILED** on _____ to:


O:\ABB 2008\L - Z\McGowan -- Order Granting MTD.wpd

13



**GRANTED**

EFiled: Oct 22 2007 2:37PM EDT
Transaction ID 16763296
Case No. 2202-CC

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| CHUCK GINSBURG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2202-CC |
| | ) | |
| PHILADELPHIA STOCK EXCHANGE, INC., | ) | |
| MEYER S. FRUCHER, JOHN F. WALLACE, I. | ) | |
| ISABELLE BENTON, DANIEL BIGELOW, | ) | |
| KEVIN J. KENNEDY, KEVIN CARROLL, | ) | |
| CHRISTOPHER R. CARTER, MICHAEL J. | ) | |
| CURCIO, ALBERT S. DANDRIDGE, III, PETER | ) | |
| C. ERICHSEN, ESQUIRE, WYCHE FOWLER, | ) | |
| JR., ISAAC C. HUNT, JR., ELEANOR W. | ) | |
| MYERS, DANIEL B. O'ROURKE, | ) | |
| CONSTANTINE PAPADAKIS, CHARLES P. | ) | |
| PIZZI, LARRY L. PRESSLER, GENE SPERLING, | ) | |
| WILLIAM STALLKAMP, WENDY S. WHITE, | ) | |
| CITADEL DERIVATIVES GROUP LLC, | ) | |
| MERRILL LYNCH, PIERCE, FENNER & SMITH, | ) | |
| INC., CREDIT SUISSE FIRST BOSTON NEXT | ) | |
| FUND, INC., CITIGROUP FINANCIAL | ) | |
| PRODUCTS, INC., MORGAN STANLEY & CO., | ) | |
| INC., AND UBS SECURITIES LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND FINAL JUDGMENT

A hearing having been held before this Court on October 22, 2007,

pursuant to the Court's Order of September 6, 2007 (the "Scheduling Order"), upon a

Stipulation of Settlement, filed on September 4, 2007 (the "Stipulation"), of the above-

captioned action (the "Action"), which is incorporated herein by reference; it appearing

that due notice has been given in accordance with the aforesaid Scheduling Order; the

respective parties having appeared by their attorneys of record; the Court having heard

and considered evidence in support of the proposed Settlement; the attorneys for the respective parties having been heard; an opportunity to be heard having been given to all other persons requesting to be heard in accordance with the Scheduling Order; the Court having determined that the notice to the Class, provisionally certified pursuant to an Order dated May 11, 2007, as amended by Order dated August 29, 2007, was adequate and sufficient; and the entire matter of the proposed Settlement having been heard and considered by the Court;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** this 22nd day of October, 2007, that:

1.      Unless otherwise defined herein, all defined terms shall have the meaning set forth in the Stipulation.

2.      The Notice of Pendency of Class Action, Proposed Settlement of Class Action, and Settlement Hearing (the "Notice") has been given to the Class, pursuant to and in the manner directed by the Scheduling Order, proof of mailing of the Notice to the Class was filed with the Court, and full opportunity to be heard has been offered to all parties, the Class, and persons in interest.  The form and manner of the Notice is hereby determined to have been the best notice practicable under the circumstances and to have been given in full compliance with each of the requirements of Court of Chancery Rule 23 and due process, and it is further determined that all members of the Class are bound by this Order and Final Judgment.

3.      Based on the record in the Action, each of the provisions of Court of Chancery Rule 23 has been satisfied and the Action has been properly maintained according to the provisions of Court of Chancery Rules 23(a) and 23(b)(1) and (b)(2).

2

Specifically, this Court finds that (1) the Class contemplated in the Action is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the Class; (3) the claims of the representative Plaintiff are typical of the claims of the Class; (4) the representative Plaintiff has fairly and adequately protected the interests of the Class; (5) the prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications or adjudications that would be dispositive of the interests of other non-party Class members; and (6) Defendants have acted or refused to act on grounds generally applicable to the Class.

4.      The Action is certified as a class action, pursuant to Court of Chancery Rules 23(a) and 23(b)(1) and (b)(2), on behalf of a class composed of all class A common stockholders of the Philadelphia Stock Exchange, Inc. ("PHLX"), on April 20, 2005, and their transferees or successors in interest through June 20, 2007, except: (i) defendants; (ii) defendants' immediate family members; (iii) defendants' employees other than (a) PHLX employees below the level of First Vice President, (b) Keith E. Ford, and (c) Thomas Mester; and (iv) defendants' affiliates, provided that non-defendant partners or owners of business entities that held Class A stock on April 20, 2005 shall be entitled to be members of the class to the extent of their ownership interest in the business entities (as if they held their ownership interests in their own names).  Plaintiff is certified as Class Representative and his counsel as Class Counsel.

5.      The Stipulation and Settlement and all transactions preparatory or incidental thereto are found to be substantially and procedurally fair, reasonable, adequate, and in the best interests of the Class, and are hereby approved pursuant to Court of Chancery Rule 23(e).  The parties to the Stipulation are hereby authorized and

3

directed to comply with and to consummate the Settlement in accordance with its terms and provisions, and the Register in Chancery is directed to enter and docket this Order and Final Judgment.

6.     This Order and Final Judgment shall not constitute any evidence of or admission by any party herein that any wrongdoing has been committed by any of the parties to the Action and shall not be deemed to create any inference that any liability exists therefore.

7.     The Action is hereby dismissed with prejudice as to all Defendants named in the Action and against Plaintiff and all other members of the Class on the merits, and, except as provided in the Stipulation, without costs.

8.     "Defendant-Related Releasees" means Defendants and their respective immediate family members, their respective present and former parents, subsidiaries, divisions, and affiliates; the present and former employees, members, principals, officers, governors, and directors of each of them; the present and former attorneys, advisors, financial advisors, investment bankers, trustees, administrators, fiduciaries, consultants, representatives, accountants and auditors, insurers, and agents of each of them; and the predecessors, estates, heirs, executors, trusts, trustees, administrators, successors and assigns of each.

9.     "Plaintiff-Related Releasees" means Plaintiff and his immediate family members (including parents and child), his present and former attorneys, advisors, trustees, administrators, fiduciaries, consultants, representatives, accountants and auditors, insurers, and agents of each of them; and the predecessors, estates, heirs, executors, trusts, trustees, administrators, successors and assigns of each.

10.    "Released Persons" means Plaintiff-Related Releasees and Defendant-Related Releasees.

11.    "Settled Claims" means:

(a)    As against the Defendant-Related Releasees:  all claims, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, judgments, suits, fees, expenses, costs, matters, and issues of any kind or nature whatsoever, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, matured or unmatured, that have been, could have been, or in the future can or might be asserted in this Action or in any court, tribunal, or proceeding (including, but not limited to, any claims arising under federal or state statutory or common law relating to alleged fraud, breach of any duty, negligence, violations of state or federal securities laws or otherwise) by or on behalf of any member of the Class, whether individual, class, derivative, representative, legal, equitable, or any other type or in any other capacity, and based on any conduct that occurred prior to the date of this Stipulation, against any Defendant-Related Releasees, whether or not any such Defendant-Related Releasees were named, served with process, or appeared in this Action, which have arisen, could have arisen, arise now, or may hereafter arise out of, or relate in any manner to the claims, demands, assertions, allegations, facts, events, transactions, matters, acts, occurrences, statements, representations, misrepresentations, omissions, or any other matter, thing, or cause whatsoever, or any series thereof, embraced, involved, or set forth in, or referred to or otherwise related, directly or indirectly, in any way to, this Action or the subject matter of this Action, and including without limitation any claims (whether or not asserted) in any way related to: (i) Demutualization; (ii) the Exchange's decision to

5

reject a business combination with Archipelago; (iii) the Exchange's consideration of any merger, acquisition, joint venture, business combination, initial public offering, or other strategic initiatives or transactions involving the Exchange as an alternative to a business combination with Archipelago or the Strategic Investments; (iv) the Tender Offer; (v) the value or valuations of the Exchange done in connection with (iii); (vi) any question of Board or management compensation and Board reorganization prior to December 31, 2006; and/or (vii) the Strategic Investments (including expressly any alleged violations of Article IV of the Exchange's Certificate of Incorporation); and/or (viii) any and all alleged breaches of fiduciary or other duties of the Defendant-Related Releasees; provided however that the Settled Claims shall not be construed to limit or release any claims to enforce the terms of the Stipulation.

(b)    As against the Plaintiff-Related Releasees:  all claims, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, judgments, suits, fees, expenses, costs, matters, and issues of any kind or nature whatsoever, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, matured or unmatured, that have arisen, could have arisen, arise now or hereafter from their participation in or conduct involving or relating to the prosecution of this Action; and provided further that the Settled Claims shall not be construed to limit or release any claims to enforce the terms of the Stipulation.

12.    The releases set forth herein extend to claims that any person granting the release (the "Releasing Person") does not know or suspect to exist at the time of the release, which if known, might have affected the Releasing Person's decision to enter into the release.  The Releasing Person shall be deemed to relinquish, to the extent

6

applicable, and to the full extent permitted by law, the provisions, rights, and benefits of

§ 1542 of the California Civil Code which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

In addition, the Releasing Person will be deemed to relinquish, to the extent applicable,

and to the full extent permitted by law, the provisions, rights, and benefits of any law of

any state or territory of the United States, federal law, or principle of common law that is

similar, comparable, or equivalent to § 1542 of the California Civil Code.

13.     Plaintiff and all members of the Class, Defendants, their respective

affiliates, and anyone claiming through or for the benefit of any of them, are hereby

permanently barred and enjoined from commencing, or in any way participating in the

commencement of, any action or proceeding, in any forum, asserting against any of the

Released Persons any Settled Claims, either directly, representatively, derivatively, or in

any other capacity.

14.     This Final Judgment and Order is a final judgment under Court of

Chancery Rule 54(b) as to the claims and issues to which it applies.  The Court has

determined there is no just reason for delay and directs judgment on each of the claims

resolved hereby.

15.     The effectiveness of this Order and Final Judgment and the obligations of

Plaintiff and Defendants under the Settlement shall not be conditioned upon or subject to

the resolution of any appeal from this Order and Final Judgment that relates solely to the

issue of Class Counsel's application for an award of attorneys' fees and expenses.

16.     Without affecting the finality of this Order and Final Judgment in any way, this Court reserves jurisdiction over all matters relating to the administration and consummation of the Settlement, including the Plan of Allocation.


_____
Chancellor William B. Chandler III